GEORGE TAYLOR & another *vs.* SILAS H. JAQUES & another.

On an issue whether a promissory note was made under duress, evidence is admissible that a person to whom the payee made threats against the maker repeated them to the maker, in the absence of the payee, just before the making of the note.

The threat of a criminal prosecution, used to compel the giving of a promissory note, may constitute duress, although the amount for which the note is given is actually due to the payee from the maker.

A promissory note in settlement of a claim may be void as given under an agreement to suppress a criminal prosecution, although no threats of prosecution are made at the time of settlement, if they have been made a few days before and not been retracted.

CONTRACT against Silas H. Jaques and Asa D. Clark, on a promissory note for $500, made by Jaques, payable to the order of Clark, and by him indorsed to the plaintiffs. Jaques, in his answer, denied the making of the note, and alleged that, if he did sign the note, his signature was procured by fraud, duress and threats of imprisonment, and further that it was procured under an agreement to suppress a criminal prosecution against him. Clark, in his answer, denied that he indorsed the note, and alleged that, if he did indorse it, his signature was procured by duress exercised upon him and Jaques, and further that it was procured under an agreement to suppress a criminal prosecution against Jaques.

At the trial in the superior court, before *Brigham*, C. J., it appeared that the plaintiffs were merchants in New York and Jaques was a travelling agent in their employment; that in March 1870 there was an unsettled account between the plaintiffs and Jaques, and a question about the amount which they had agreed to allow him as salary; that Jaques insisted that if any balance was due to them it was less than they claimed, and the plaintiffs insisted that he was in debt to them in the sum of $700; that on March 15 the plaintiffs telegraphed to the father of Jaques at Lowell, that, unless they received $700 immediately, Jaques would be prosecuted criminally and imprisoned at once, and thereupon the father of Jaques sent Clark, a friend of the family and of Jaques, to New York, to ascertain what the trouble was, and to represent him; that on March 16 Clark saw the

plaintiffs in New York, and was repeatedly told by them that, " unless he had $700, he could not see Jaques, except in prison, that they knew where he was, that he had been guilty of a crime in taking their money, that he was owing them $700, that they had procured a warrant for his arrest, and that when once in prison seventeen times $700 could not save him ; " that on March 19 the plaintiffs arranged an interview at their counting-room between themselves, Clark and Jaques ; and that at this interview, which was the only one Clark had with Jaques, the note in suit was signed by Jaques and Clark and delivered to the plaintiffs.

There was evidence tending to show that at this interview the plaintiffs exhibited to Jaques an account made up by them, leaving a balance against him of $637, and offered to receive from him his promissory note for $500, indorsed by Clark, in settlement of the account ; that Jaques assented to the account ; and that thereupon the note declared on was made. Jaques and Clark testified that Jaques did not assent to the account, and that, just before the note was signed, the plaintiffs, in answer to inquiries by Clark, said that if the note was signed there should be no arrest.

The defendants offered evidence tending to show that at this interview, while the plaintiffs had stepped into another room to write the note, Clark, being for a moment alone with Jaques, told Jaques, in a tone not to be heard by the plaintiffs, what they had said about arresting him, and that they intended to arrest him unless the settlement was made ; but the judge excluded the evidence.

There was evidence as to what amount of salary would have been a fair compensation for Jaques's services.

Among the instructions which the defendants requested the judge to give to the jury, the first was, that Clark was a joint promisor ; and the third was, that, " if the note was taken by the plaintiffs to compound a crime, then it was an unlawful contract, and voidable by the defendants." The judge declined to give these instructions, refusing to give the third on the ground that " there was no evidence of a felony by Jaques, or any charge of the same at the time of making the note."

Taylor *v.* Jaques.

The judge instructed the jury that the contract made by Jaques might be avoided by him if entered into under the influence of duress or by coercion practised upon him by the plaintiffs; that "the coercion may have been by an unlawful restraint of the liberty of the person who is the subject of the duress, by imprisonment without legal process or by legal process sued out maliciously or without probable cause, or it may have been by threats of imprisonment, inducing a reasonably grounded fear of restraint of liberty; that the coercion by one of these modes must have been the inducing and controlling cause of his contract, by overcoming his mind and will;" that all the circumstances attending the making of the contract might be considered in determining the question of duress; and that "an indebtedness of Jaques to the plaintiffs, admitted to the amount of the note, or supposed and assumed by the parties to that amount, or an indebtedness of part of the amount, and an admission of a liability to indemnify the plaintiffs for damages suffered by them through any misconduct of Jaques, as their representative, for the remaining part of the amount, would repel any inference of duress, although the facts attending the making of the note in other particulars would indicate that the making of the note was under the influence of duress."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*G. Stevens,* for the defendants.

*T. Wentworth & J. F. McEvoy,* for the plaintiffs.

AMES, J.   The answer insists upon two grounds of defence; first, that the note was obtained from the defendant Jaques by duress and threats of unlawful imprisonment; second, that it was given upon an agreement to suppress a criminal prosecution, and is therefore illegal and void.

The case finds that there was an unsettled account between Jaques and the plaintiffs, and that he insisted that, if any balance was due to them, it was much less than they claimed. They on their part not only insisted that he was in debt to them in the sum of $700, but that he had been guilty of the crime of embezzlement.   They had communicated to his father, and also to the

Taylor *v.* Jaques.

defendant Clark, who was the father's friend and agent in the matter, their determination to commence a criminal prosecution immediately, unless their demand of the payment of that sum should be complied with at once. This being the relation of the parties, they met at the plaintiffs' counting-room in New York, and there a settlement took place, and the note in suit was given. In order to avail himself of his defence on the ground of duress, it was incumbent on Jaques to prove that he signed the note under a reasonable and well grounded belief, derived from the conduct and declarations of the plaintiffs, that if he did not sign it he would be arrested and prosecuted on a criminal charge. Without such a belief or expectation there was no duress. It was certainly proper, therefore, that he should be allowed to prove what the plaintiffs did and said, at and just before that interview, tending to create or justify such a belief. If, at that interview, Clark, who was there as his friend, and with a view to his relief, received from the plaintiffs any private intimations as to what they intended to do if security should not be given, and in a whisper informed him what that intention was, it is obvious that the effect on his mind would be exactly the same as if the information or threat came to him directly from the plaintiffs themselves. His will might be controlled as effectually by one mode of communication as the other. The ruling of the court therefore, in excluding Clark's testimony as to what the plaintiffs said to him, and what he thereupon communicated to Jaques about their intention to have him arrested if a settlement should not be made, was erroneous.

The definition of duress as given by the learned judge in his charge to the jury is substantially correct. He went on however to instruct them in substance that if Jaques admitted that he owed the plaintiffs the amount of the note, and the parties assumed at the time that such was the fact, that fact " would repel any inference of duress, although the facts attending the making of the note in other particulars would indicate that the making of the note was under the influence of duress." We do not concur in that view of the law. If he had embezzled their funds, they had a right to have him prosecuted. If he owed them a

debt, they had a right to accept security for it. But they would have no right to make use of criminal process for the collection of a debt. An arrest, even upon a legal warrant and upon a criminal charge, to compel the payment of a mere debt, would be a misuse of legal process, and the threat of such an arrest may constitute unlawful duress. *Hackett* v. *King*, 6 Allen, 58. We cannot say, moreover, that the admission, as well as the note itself, was not extorted from him by the influence of duress.

It appears to us also that the position of the case was such that the instruction requested in the defendants' third prayer, or something substantially like it, was appropriate and ought to have been given. There had been a charge of embezzlement, and a threat of criminal prosecution against Jaques just before the final settlement, and Clark had been sent to New York by the father "to ascertain what the trouble was." There was evidence tending to show that the threats were repeated, and it is impossible to say that those threats may not have had some influence on the minds of both defendants at the time when the note was given. It appears to us to have been a mistake on the part of the judge to refuse to give such an instruction, on the ground that there was no evidence of any charge of a felony at the time of the settlement. It is not necessary to show that it was expressly repeated at the moment of settlement. Such a charge had been made a very few days before, and nothing is reported to show that it had been retracted. It is at least possible that the settlement may have been made under the pressure of that charge. It was entirely a question of fact, whether the note was extorted from the defendants by the fear of a prosecution against Jaques, and by "torturing the compassion" of his relatives and friends. If a promise or understanding, that the threatened prosecution should be stopped, entered into, or made any part of the consideration of the note, it would be enough to render it invalid, and of no binding force against either of these defendants. Upon this question the jury have had no opportunity to pass.

As the case is to go back for trial, it becomes necessary to add that we see no ground for considering Clark as an original joint promisor, or as under any liability other than that of indorser.

And as the only question litigated is as to the validity of the note, there seems to be no occasion to go into the inquiry as to the amount of salary that would have been a fair compensation for Jaques's services to the plaintiffs.     *Exceptions sustained.*