NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1177

COMMONWEALTH

vs.

WILLIAM BERRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2016, after a jury trial, the defendant was convicted of aggravated rape, aggravated burglary, and breaking and entering in the nighttime with intent to commit a felony. In 2021, the defendant filed a motion for new trial. In 2022, after a nonevidentiary hearing before a Superior Court judge, who was not the trial judge, the motion was denied. In the defendant's consolidated appeals from his convictions and from the denial of his motion for new trial, the defendant claims that he received ineffective assistance of counsel; that the evidence was insufficient to prove the break-in occurred in the nighttime; that there were errors in the prosecutor's opening statement, cross-examination of the defendant, and closing argument; that

certain convictions were duplicative;[1] and that the trial judge abused his discretion by declining to allow the defendant to stipulate that he had sexual intercourse with the victim in lieu of having the Commonwealth present deoxyribonucleic acid (DNA) evidence.  We affirm in part, reverse in part, and remand for resentencing.

1.  <u>Ineffective assistance of counsel</u>.  In his motion for new trial, the defendant claimed that his trial counsel provided ineffective assistance by failing to consult experts to support a defense that the victim consented to have sex with him but could not recall having done so due to the effects of intoxication on memory.  In support of his motion, the defendant submitted affidavits from a Florida psychiatrist,[2] a psychologist, and his trial counsel.  In a supplemental filing, the defendant added an affidavit from a third doctor as a substitute for the Florida psychiatrist, who had retired.  As the motion judge determined, the defendant's claim lacks merit.

We review the denial of a motion for new trial "to determine whether there has been a significant error of law or other abuse of discretion."  <u>Commonwealth</u> v. <u>Grace</u>, 397 Mass. 303, 307 (1986).  Where the defendant claims ineffective

---

[1] The judge who decided the defendant's motion for new trial declined to address this issue.

[2] This affidavit is not in the record before us.

2

assistance of counsel, a new trial is warranted only if the defendant shows that "there has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The defendant bears the burden of proving any fact that is not supported by the trial record. See Commonwealth v. Watson, 455 Mass. 246, 256 (2009); Commonwealth v. Comita, 441 Mass. 86, 93 (2004); Commonwealth v. Schand, 420 Mass. 783, 788 n.1 (1995).

As stated above, the defendant claims that trial counsel's failure to consult experts on intoxication and its effect on memory was ineffective. By not pursuing such a theory, the defendant claims, trial counsel deprived him of the defense that he might reasonably have perceived the victim to be capable of consent even though she was experiencing an alcohol-induced blackout. This, in turn, might have prevented the Commonwealth from carrying its burden to show that the defendant knew or should have known the victim lacked the capacity to consent to sexual intercourse due to her intoxication.

"An attorney's tactical decision amounts to ineffective assistance of counsel only if it was manifestly unreasonable

3

when made." Commonwealth v. Frank, 433 Mass. 185, 190 (2001), quoting Commonwealth v. Coonan, 428 Mass. 823, 827 (1999). Under the first prong of Saferian, "[i]f the record reveals sound tactical reasons for counsel's decisions, an ineffective assistance of counsel claim will not succeed." Commonwealth v. Gonzalez, 443 Mass. 799, 809 (2005). "The critical inquiry is whether counsel's choice was an informed and reasonable decision; a consideration to be assessed in light of his over-all representation of the defendant at the trial." Frank, supra at 192.

We conclude that trial counsel's decision to not call expert witnesses on memory and intoxication was not manifestly unreasonable. The defendant's trial counsel averred that he was "very familiar with the literature and research involving perception and memory," had used experts on these subjects in prior cases, and "gave serious consideration to the pros and cons" of calling such witnesses in the defendant's case. Even with his familiarity with the subjects, trial counsel decided to not call such witnesses because he feared the experts would have been subject to potentially damaging cross-examination.

This case stands on a different footing from cases where defense counsel was ineffective for not having his own client evaluated by a mental health expert where counsel had notice of a potential issue of lack of criminal responsibility. See,

4

e.g., Commonwealth v. Roberio, 428 Mass. 278, 279-280 (1998).
The experts the defendant now proposes, who did not interview
the victim, could have offered only general testimony about the
effects of intoxication on cognitive function and memory based
on the facts of this case.  Moreover, as the defendant's trial
counsel noted in his affidavits, calling an expert who would
state that a person could be so intoxicated that she could
experience a blackout would run the risk of highlighting the
Commonwealth's evidence that the victim was so intoxicated that
she was incapable of consenting to sex.  See Frank, 433 Mass. at
191 (not ineffective for counsel to choose not to use
intoxication expert because he feared potentially damaging
cross-examination).[3]

Even if trial counsel's choice was manifestly unreasonable,
the defendant cannot satisfy the second prong of Saferian, i.e.,
that he was deprived of a substantial ground of defense.  The
essence of the defendant's posttrial theory is that the proposed
experts would have permitted the jury to reconcile the
defendant's account with the victim's, without the defendant
having to maintain that the victim had lied.  Here again, as the
motion judge noted, neither expert would have been permitted to

---

[3] Also, calling an expert on intoxication and memory would have
undermined the reasonable ground of defense that trial counsel
did pursue, i.e., that the victim consented to having sex with
the defendant but regretted that decision in the morning.

5

opine on the victim's state of intoxication and how it affected the accuracy of her memory. Admissible expert opinion requires that the scientific theory on which the expert relies must be able to be "applied to the particular facts of the case in a reliable manner." Commonwealth v. Polk, 462 Mass. 23, 31 (2012). That would not have occurred here. In fact, the experts could have testified only about the general characteristics of blackouts and manipulated memory; they could not have properly opined that the victim exhibited these characteristics. The defendant has merely proposed an alternative defense theory of how his case could have been tried. But that does not establish that the reasonable theory on which it was tried, even though it failed, was the result of ineffective assistance. See Commonwealth v. Denson, 489 Mass. 138, 152 (2022).

2. Sufficiency of the evidence of nighttime. The defendant claims there was insufficient evidence to establish that the break-in at the victim's apartment occurred in the nighttime, as required for convictions under G. L. c. 266, §§ 14, 16, and G. L. c. 265, § 22 (a). We disagree.

"When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Commonwealth v.

6

Hartnett, 72 Mass. App. Ct. 467, 475 (2008), quoting . . . Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 152 (1999). . . . Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting . . . Jackson v. Virginia, 443 U.S. 307, 319 (1979)." Commonwealth v. Rocheteau, 74 Mass. App. Ct. 17, 19 (2009). We add that "circumstantial evidence is competent to establish guilt beyond a reasonable doubt." Commonwealth v. Bush, 427 Mass. 26, 30 (1998). See Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").

Pursuant to G. L. c. 278, § 10, "night time" is defined as "the time between one hour after sunset on one day and one hour before sunrise on the next day." Direct evidence of the time of a break-in is not required to prove the element of "night time." See Commonwealth v. Bennett, 424 Mass. 64, 67-69 (1997).

Here, the jury properly could infer that the break-in occurred several hours after sunset in the early morning of August 24, 2014, and at least one hour before sunrise. See Commonwealth v. Kingsbury, 378 Mass. 751, 754-755 (1979) (jury

7

may rely on general knowledge to determine sunset). In Bennett, the Supreme Judicial Court concluded, based on a medical examiner's testimony that "it would not be unreasonable to estimate the time of death as occurring between 2 and 5 A.M.," that "[t]he evidence most favorable to the Commonwealth is that death could have occurred at approximately 2 A.M." Bennett, 424 Mass. at 68. Here, likewise, the defendant entered the victim's apartment after 2:15 A.M., when the victim's friend fell asleep, and before 7 A.M., when the victim woke up to find the defendant in her bed; the evidence most favorable to the Commonwealth is that the defendant's entry could have occurred shortly after 2:15 A.M., more than an hour before the sun rose at 6 A.M. that day. This conclusion is further buttressed by the simple commonsense inference that, to avoid detection, the defendant would aid his crime with the guise of darkness. See Kingsbury, supra. See also Commonwealth v. Drew, 4 Mass. App. Ct. 30, 32 (1976) ("Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense"). While one could reasonably draw the inference that the break-in did not occur at night, that is of no avail to the defendant because "[t]o the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth

lies.'" Commonwealth v. Wilborne, 382 Mass. 241, 245 (1981),

quoting Commonwealth v. Amazeen, 375 Mass. 73, 81 (1978).

Even if the evidence was insufficient to establish "night

time" as it is defined in G. L. c. 278, § 10, the defendant's

conviction for aggravated rape would not be affected.  Breaking

and entering in the daytime, G. L. c. 266, § 18, is also among

the predicate crimes listed in G. L. c. 265, § 22 (a), that

qualify as offense-aggravating factors.  In Commonwealth v.

Sitko, 372 Mass. 305, 307-308 (1977), the Supreme Judicial Court

explained that:

> "a verdict of breaking and entering in the daytime may be
> entered on an indictment charging breaking and entering in
> the nighttime.  We have treated breaking and entering in
> the daytime in effect as a lesser offense within the
> aggravated offense of breaking and entering in the
> nighttime. . .  Therefore, an amendment of the indictment
> in this case was not even necessary in order to sustain a
> charge and conviction of breaking and entering in the
> daytime."

Contrary to the defendant's claim, breaking and entering in the

daytime would have properly been before the jury, see id., even

without the amendment to the indictment, which is what occurred

here.  Indeed, where a conviction must be vacated based on

insufficient evidence or some other error, reducing the

conviction to a lesser included offense does not offend the

principle of trial by jury because, "[b]y convicting the

defendant of [the greater offense], the jury necessarily

concluded that the defendant had [committed the lesser

9

offense]."  Commonwealth v. Trotto, 487 Mass. 708, 715 (2021).
Given that the Commonwealth's evidence, at the very least,
supported the defendant's conviction for breaking and entering
in the daytime, his conviction for aggravated rape was proper.[4]

   3.  The prosecutor's challenged remarks.  The defendant
challenges a variety of remarks the prosecutor made during her
opening statement, cross-examination of the defendant, and
closing argument.  These claims lack merit, as the remarks were
either proper, cured by instructions, or did not create a
substantial risk of a miscarriage of justice.

   The first claimed improper remark, in the prosecutor's
closing argument, was that the defendant "had the benefit of
hearing the evidence over the past two days."  This claim was
preserved.  The Commonwealth argues that this case is unlike
Commonwealth v. Person, 400 Mass. 136, 139-140 (1987), and
Commonwealth v. Alphonse, 87 Mass. App. Ct. 336, 337-339 (2015),
on which the defendant relies, because the instant defendant
made statements to the police, whereas the defendants in Person
and Alphonse did not.  While it is true that a prosecutor is

_____

[4] The cases relied on by the defendant, Dunn v. United States,
442 U.S. 100 (1979), and Commonwealth v. Mills, 436 Mass. 387
(2002), did not involve lesser included offenses, and
Commonwealth v. Pfeiffer, 492 Mass. 440 (2023), addressed a
judge's discretion to reduce a verdict under Mass. R. Crim. P.
25 (b) (2), as amended, 420 Mass. 1502 (1995), which is not an
issue before us.

10

free to point out that a defendant's trial testimony did not match his prior statements to the police, and that it instead conformed to the Commonwealth's evidence, see Commonwealth v. Mendez, 476 Mass. 512, 521 (2017), abrogated on other grounds by Commonwealth v. Privette, 491 Mass. 501 (2023), we need not decide if the argument was erroneous.  Here, the trial judge negated any risk of prejudice to the defendant with a contemporaneous instruction to the jury to "strike any reference to the benefit of the defendant hearing the evidence," and that the defendant had "a Constitutional right to be present during the trial."  The jury is presumed to have followed these instructions.  See Commonwealth v. Gonzalez, 465 Mass. 672, 681 (2013).[5]  The request for a mistrial was properly denied.

The defendant also claims the prosecutor made an improper appeal to sympathy for the victim and her rights by telling the jury that the victim was a "person," "woman," "student," "teacher," "sister," and "daughter," who had a right to decide who could enter "her bedroom," and "who went into her body that night[,] [a]nd [the defendant] took that right from her."  These statements were objected to by the defendant.  In any event, the argument was not improper, as the prosecutor was permitted "to

_____

[5] Contrary to the defendant's claim, the judge did not contradict this instruction with a later more general, unobjected-to instruction regarding witness perception.

11

tell the jury something of the [victim] in order to humanize the proceedings." Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 512 (2022), quoting Commonwealth v. Santiago, 425 Mass. 491, 495 (1997), S.C., 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998). Also, the trial judge instructed the jury not to "consider any arguments that invoke sympathy" and reiterated in the final jury charge that "[e]motion or sympathy, passion or prejudice have no place in your deliberations." There was no unfair prejudice.

Next, the defendant claims error in the prosecutor's opening statement, which referred to the victim's front door as "an entranceway for evil." No objection was lodged to this remark. This remark can be fairly characterized as "'enthusiastic rhetoric, strong advocacy, and excusable hyperbole,' [but] it is not grounds for reversal" (citation omitted). Commonwealth v. Henley, 488 Mass. 95, 131 (2021). Even if the characterization was improper, the trial judge's instruction regarding not rendering a verdict based on sympathy or emotion prevented any substantial risk of a miscarriage of justice from occurring.[6]

---

[6] The defendant also claims that the prosecutor vouched for the victim's credibility in her opening statement by noting that the victim is "going to raise her right hand and she's going to swear to tell you the truth, the whole truth, and nothing but the truth." There was no objection. In any event, this was not vouching, as the prosecutor did not express any personal

The defendant further claims (without having objected at trial) that it was improper for the prosecutor to ask him on cross-examination, relative to his DNA match, whether he had told the police that "the Chinese girl who works in the lab must have made a mistake." Although the question revealed a racially insensitive comment by the defendant, the question itself was relevant to his credibility, as it was reference to how his DNA was found in the victim. To the extent his statement reflected poorly on the defendant, it was his own doing. There was no error.

As the Commonwealth acknowledges, the closest the prosecutor came to an improper argument was when she stated, without objection, that the victim endured the scrutiny of the trial:

> "[The victim] entered this courtroom. She raised her right hand. She confronted her rapist. She sat in a room full of strangers. She endured questions about the worst day of her life. And [defense counsel] has just asked you to scrutinize her[:] [t]o scrutinize her for making coffee[;] [t]o scrutinize her for taking a shower[;] [t]o scrutinize her for not screaming loud enough[;] [and] [t]o scrutinize her for not running out her front door toward her rapist."

However, the prosecutor did not argue that the victim's decision to testify in court made her credible. Contrast Commonwealth v.

_____

knowledge of the victim's veracity. See Commonwealth v. Silvelo, 486 Mass. 13, 20 (2020), abrogated on other grounds by Commonwealth v. Desiderio, 491 Mass. 809 (2023). There was no error, and thus no risk that justice miscarried.

Cruz, 98 Mass. App. Ct. 383, 390-392 (2020).  Instead, the prosecutor's argument was an attempt to lay out some of the circumstances through which the jury could assess the victim's credibility and, more specifically, to counter defense counsel's suggestion in closing argument that the victim's matter-of-fact approach showed she was lying.[7]  Even if the remarks were erroneous, the error did not create a substantial risk of a miscarriage of justice where the Commonwealth's case was very strong and did not depend solely on the victim's credibility.

4.  Duplicative convictions.  We agree with the parties that the trial judge should have dismissed both the aggravated burglary and the breaking and entering convictions because the latter is duplicative of the former, see Commonwealth v. Thomas, 21 Mass. App. Ct. 183, 187-188 (1985), and both are duplicative of the conviction for aggravated rape.  Because the defendant was sentenced to a consecutive sentence of probation on the aggravated burglary conviction, the case must be remanded to the Superior Court for resentencing.

---

[7] We are unpersuaded by the defendant's claim that the prosecutor, by mentioning defense counsel, was improperly disparaging counsel for doing his job.  The prosecutor's comment was just as easily understood as simply identifying the point to which the prosecutor's argument responded.  Defense counsel's lack of objection is telling.  See Commonwealth v. Toro, 395 Mass. 354, 360 (1985).

5. Motion to exclude DNA evidence. Finally, the defendant claims that the trial judge abused his discretion by denying his motion to exclude the DNA evidence that linked him to the aggravated rape, and to instead permit the defendant to stipulate that he had sexual intercourse with the victim. We disagree.

Contrary to the defendant's claim, neither the prosecutor nor the judge relied on Old Chief v. United States, 519 U.S. 172 (1997), in support of the premise that a defendant cannot prevent the Commonwealth from introducing relevant evidence by agreeing to stipulate to the fact the evidence is being offered to prove. In any event, in Old Chief, the United States Supreme Court held that "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense." Id. at 189.[8] The reason is that the Commonwealth must do more than provide evidence of the defendant's guilt -- it must prove him guilty of the charged crimes beyond a reasonable doubt. See id. at 188-189; Commonwealth v. Liptak, 80 Mass. App. Ct. 76, 83 (2011) ("A party may not preclude the admission of relevant [evidence] by agreeing to stipulate to the fact that the offered evidence

---

[8] The exception to this rule pertains to proof of prior convictions, which is not applicable to this case. See id. at 190.

15

tends to prove").  There was neither error, nor an abuse of discretion.

6.  Conclusion.  On the indictments charging aggravated burglary and breaking and entering in the nighttime with intent to commit a felony, the judgments are reversed, the verdicts are set aside, and the indictments are to be dismissed.  On the indictment charging aggravated rape, the verdict shall stand, the sentence is vacated, and the case is remanded to the Superior Court for resentencing.  The denial of the defendant's motion for new trial is affirmed.

So ordered.

By the Court (Meade,
  Massing & Sacks, JJ.[9]),

Assistant Clerk

Entered:  January 18, 2024.

---

[9] The panelists are listed in order of seniority.